[No. F017396. Fifth Dist. Jan. 22, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY J. CABRAL, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Phillip I. Bronson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edmund D. McMurray and Susan J. Orton, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MARTIN, Acting P. J.**—A jury convicted appellant, Gregory Cabral, of the following crimes: two counts of penetration by a foreign object (Pen. Code, § 289, subd. (a)[2] , counts 1[3] and 3), sodomy (§ 286, subd. (c), count 2), four counts of rape (§ 261, subd. (a)(2), counts 4, 5, 8, and 9) two counts of oral copulation upon a child under the age of 14 (§ 288a, subd. (c), counts 6 and 7), six counts of lewd or lascivious acts upon a child under 14 (§ 288, subd.

---

[2]All further statutory references are to the Penal Code, unless otherwise indicated.

[3]In the record all counts are designated by Roman numerals. They are designated here by the corresponding Arabic numerals for ease of reference.

(b), counts 10-15 ) and one count of continuous sexual abuse of a child (§ 288.5, count 16). The jury also found that in the commission of each offense appellant occupied a position of special trust and committed an act of substantial sexual conduct, within the meaning of section 1203.066, subdivision (a)(9). The court imposed an aggregate sentence of 39 years, with the lower term of 6 years on the section 288.5 violation designated as the principal term.[4]

On appeal, appellant contends (1) the resident child molester statute (§ 288.5) and its implementing instruction (CALJIC No. 10.42.6) unconstitutionally deprived him of his right to unanimous jury findings, (2) his conviction under section 288.5 constituted an unconstitutional ex post facto determination, and (3) the court committed prejudicial error in allowing into evidence a letter from appellant to a psychotherapist in which he admitted acts of sexual molestation. We will agree with appellant's second contention, reverse the conviction on count 16 and remand for resentencing. In all other respects we will affirm.

FACTS

Appellant is the father of J., who was born April 26, 1976, and T., who is approximately one year older than his sister. R. Cabral is J.'s mother. She and appellant were divorced in 1984 or 1985. The couple continued living together after the divorce.

J. testified to the following: Appellant first sexually molested her when she was in the third grade. Since that time, one month was the longest period of time that appellant had gone without engaging in sexual acts with her. Between 1984 and May 1991, appellant performed acts of touching J.'s vagina and breasts, forced oral copulation, anal intercourse and penetration of her vagina with his penis and with foreign objects, including his fingers.[5]

J. engaged in these sexual acts with appellant out of fear of him "hitting or hurting" her. She had seen him hit her mother and brother. On one occasion, appellant accused her of lying and banged her head into a washing machine.

---

[4]In addition to the six-year term on count 16, the sentence was calculated as follows: The court imposed the lower term of three years on all other counts. The terms on counts 1 and 2 were imposed to run concurrently with each other but consecutively to all other counts. The terms on counts 3 and 4 were imposed to run concurrently with each other but consecutively to all other counts. The terms on counts 5, 6, and 7 were imposed to run concurrently with each other but consecutively to all other counts. Consecutive terms were imposed on the remaining counts (8-15).

[5]J. testified as to place, date or approximate date and other details of these offenses. These details are not relevant to our discussion.

Appellant had also hit J. when she threatened to tell her mother about the acts of sexual molestation. She was afraid to tell her mother about the molestations.

Child protective services (CPS) had direct contact with the Cabrals for a period of over two years, as a result of an incident in which appellant struck T. J. never said anything to CPS representatives about the sexual abuse because she was afraid her father would beat her. Detective Frank Fenn of the Riverbank Police Department had spoken to J. previously while investigating an alleged rape of J.'s friend, Melissa K. J. did not tell the officer at that time about the molests. She was "thinking I could solve them myself."

After J. reported her father's actions to police in May 1991, Dr. Lee Herskowitz, a pediatrician at Stanislaus Medical Center, performed a physical examination of J. Dr. Herskowitz testified that he found a two- to three-millimeter hymenal tear in the vagina, and between the genital area and the anus he found very prominent, elevated ridging that "appeared [to be] the result of some scar tissue. . . ." He also found very prominent hemorrhoidal vessels in the perianal area and some lesions which were consistent with chronic irritation to the anal region. A vaginal culture revealed an organism which is consistent with sexual activity in children. Dr. Herskowitz concluded that the physical findings were consistent with J.'s reported history of long-term sexual abuse.

R. Cabral testified that in June or July 1991, she received a letter from appellant in the mail. In the letter, admitted into evidence, appellant wrote, "I hope that one day you will all forgive me for all that I'd done to our family." He wrote, "J[.] may never speak to me again." He also wrote, "I hope that I've not permenetly [sic] damaged [J. and T.]" and "[W]e must all work together in order to repair the damage that has been done. Try to understand and not condemn."

Detective Fenn testified that he interviewed J. on May 9, 1991. J. related to him numerous instances of sexual abuse by appellant, the last one occurring on May 3, 1991.

Detective Fenn interviewed appellant. Fenn told appellant that J. had made "some accusations of sexual misconduct" against him. Appellant "said, 'This sounds just like what happened to my wife's family. The sisters wanted out so they made up a story about a molest with their father and there wasn't really anything to it. . . .'" Fenn told appellant that J.'s descriptions of the acts of sexual abuse were "very graphic." Appellant responded that he had some pornographic films hidden and J. had found them and "watched

them with her friends one night and they had gotten into the liquor cabinet and that's how she knew about those kinds of things."

T., age 16 at the time of the trial, testified that he had seen a dildo in the house. J. took it to school once and once, as a joke, slapped T. lightly with it. On more than one occasion he saw J. and some boys playing "X-rated" videos in the living room.

After appellant was taken into custody, his attorney told him that he could receive a prison sentence of more than 140 years. Two other prisoners told him about a program called Parents United which was run by a psychologist, Deborah Johnson. They told him he could receive a lesser sentence if he went through the program but that he would have to admit the allegations of sexual molestation.

Deborah Johnson, Ph.D., testified that she conducts the Stanislaus County Adult Sex Offender Treatment Program; the group component of the program is called Parents United. Appellant wrote to Dr. Johnson, stating that he had sexually molested his daughter and that he "want[ed] to be in [the Parents United] program." He testified, however, that he only wrote this "in hope of getting county time, going through some program, getting probation just like these other gentlemen and going back home to my family." Dr. Johnson did not respond.

Concerning his letter to Ms. Cabral, he said he was apologizing for his failings as a parent, including "slap[ping] the hell out of [T.]" on several occasions. He testified that he wrote that J. would never speak to him again because by defending himself he would have to show that she was lying. By his reference to the "damage that's been done" he meant that the "family [was] torn all to hell over" his daughter falsely accusing him of sexual abuse.

Appellant was a "strict disciplinarian" as a parent. He disciplined J. for her not doing her chores and for poor school performance, by "grounding" her or restricting her telephone or television use. He restricted her dating and he "did not want her to wear short skirts, halter tops" and tight shorts and pants. When she was younger he spanked her with a paddle. J. also testified that appellant was very strict with her.

Appellant had noticed J.'s hemorrhoids when diapering or changing her when she was a baby. He had also noticed "little tiny pieces of skin that are down in the same general area." He had assumed that was hereditary, as he has the same thing in his arm pit.

Linda Wenger was a neighbor of the Cabrals. She testified that in May 1991, Ms. Cabral told her that appellant had been arrested for molesting J.,

that she wanted her children to meet her boyfriend and that she was going to sell everything belonging to appellant. About a week later there was a garage sale at the Cabral residence. T. testified he was taken to a receiving home after appellant was arrested and that by the time he returned home, five days later, there had been several garage sales.

Frank S., age 14 at the time of trial, testified that J. once told him that "after she got rid of her father, that she's going to get rid of her mom." J. denied making this statement.

Melissa K. testified to the following: On one occasion J. asked Melissa to come into her house. Inside the house, Melissa encountered Bobby P. Bobby, Melissa and J. were all acquainted with each other. Bobby asked Melissa if he could talk to her in appellant's bedroom. J. said, "Just talk to him, it will be all right." Melissa went inside the bedroom with Bobby, where he raped her.

Bobby testified that he did not force Melissa to have sex with him although he did have consensual sexual intercourse with her at the Cabral residence. He testified further that J. let Melissa and him into her parent's bedroom after Melissa told J. that she (Melissa) and Bobby were going to have sex. J. sat in the living room while they had sex. Bobby also testified that he had watched "X-rated" videos with J. at her house.

Mike Bray, one of J.'s high school teachers, testified that the school attendance office once informed him that a note J. had presented excusing an absence had not been signed by her parents. When Bray asked J. about the note she admitted that it was "forged."

DISCUSSION

I.

*Psychotherapist-patient Privilege*

Appellant contends that the court committed prejudicial error in admitting into evidence his letter to Dr. Deborah Johnson. He argues that this letter was protected by the psychotherapist-patient privilege. (Evid. Code, § 1014.)[6] We disagree.

Section 1014 protects all "confidential communication[s] between patient and psychotherapist." There is no dispute that Dr. Johnson is a psychotherapist for purposes of the privilege. (§ 1010.) We must therefore address the

---

[6]All statutory references in this section are to the Evidence Code.

question of whether appellant was a patient, i.e., "[a] person who consults a psychotherapist . . . *for the purpose* of securing a diagnosis or . . . treatment of his mental or emotional condition. . . ." (§ 1011, italics added.)[7]

We note at the outset that the burden is on the party claiming the privilege " 'to prove the preliminary facts to show that the privilege applies.' " (*Mahoney* v. *Superior Court* (1983) 142 Cal.App.3d 937, 941 [191 Cal.Rptr. 425].) A person's purpose in consulting a psychotherapist is such a preliminary fact. (*Ibid.*)

Appellant argues that although "[p]robation may have been the ultimate purpose of writing the letter, implicit in its terms was appellant's willingness and desire to receive treatment through Dr. Johnson's program for adult sex offenders." However, even assuming that obtaining treatment was the purpose "implicit" in the letter, we conclude that it was not "*the* purpose" (italics added) for contacting Dr. Johnson within the meaning of section 1011.

Appellant argues that the privilege under section 1014 is to be liberally construed in favor of the patient. (*In re Lifschutz* (1970) 2 Cal.3d 415, 437 [44 A.L.R.3d 1].) In *Lifschutz*, however, there was no question as to the existence of the privilege; the question was whether it would give way, on the facts of that case, to the patient-litigant exception (§ 1016). In *People* v. *Velasquez* (1987) 192 Cal.App.3d 319, 327 [237 Cal.Rptr. 366], this court stated, "As an obstruction to the search for all relevant information, the [attorney-client] privilege is to be strictly construed." Noting that other courts had held that the privilege was to be liberally construed, we stated, "The apparent contradiction between whether the attorney-client privilege should be strictly construed or liberally construed appears to be that *in attempting to establish an attorney-client relationship, or where the relationship is not clearly established, the privilege is to be strictly construed.* [Citation.] But where the relationship has been established, the basic policy behind the attorney-client privilege to promote the relationship by safeguarding the confidential disclosures of the client and the advice given by the attorney, then the policy supports a liberal construction in favor of the exercise of the privilege." (*People* v. *Velasquez, supra,* 192 Cal.App.3d at p. 327, fn. 4, italics added.) We find this reasoning equally applicable here, where appellant attempts to establish the existence of the requisite relationship. Accordingly, we will narrowly construe section 1011.

We know of no authority, and neither party directs us to any, on the specific issue of determining the purpose of a consultation with a psychotherapist for purposes of the privilege under section 1014. In *Montebello*

---

[7]We assume without deciding that in writing to Dr. Johnson appellant "consult[ed] a psychotherapist" within the meaning of section 1011.

*Rose Co.* v. *Agricultural Labor Relations Board* (1981) 119 Cal.App.3d 1 [173 Cal.Rptr. 856] this court dealt with an analogous issue in the context of the attorney-client privilege. There we stated, " 'To make the communication privileged the dominant purpose must be for transmittal to an attorney "in the course of professional employment" ' [citations]." (*Id.* at p. 32, quoting *Holm* v. *Superior Court* (1954) 42 Cal.2d 500, 507 [267 P.2d 1025].) The attorney-client privilege does not apply to communications to an attorney that are not of "a legal nature." (119 Cal.App.3d at p. 32.) "Whether a particular communication is predominantly in furtherance of the attorney-client relationship is a question of fact." (*Id.* at p. 33.)

We find the dominant purpose test equally applicable to this case. Appellant's asserted purpose in writing to Dr. Johnson, i.e., to avoid a prison sentence, was not protected under section 1014. Moreover, nowhere in his testimony does appellant suggest that even part of his purpose was to receive treatment. Assuming arguendo that, implicitly, part of appellant's purpose in writing to Dr. Johnson was to obtain treatment, we cannot conclude that appellant has met his burden in establishing that it was his dominant purpose. Accordingly, the letter was not a privileged communication.

■ Even if admission of the letter was error, we would conclude that it was not prejudicial. The jury's requests for rereadings of the testimony of the investigating officer and the examining physician does not suggest to us that the jury focused on appellant's admissions to Dr. Johnson. Moreover, there was ample evidence pointing to appellant's guilt, including J.'s testimony, Dr. Herskowitz's findings and appellant's letter to his ex-wife. On this record, although a different result was possible in the absence of the claimed privileged confidential communication,[8] we cannot conclude that a result more favorable to appellant was reasonably probable had the letter been excluded. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

II.*

*Constitutional Challenges*

. . . . . . . . . . . . . . . . . . . . . . . . . .

---

[8]Appellant argues that the evidence undermined J.'s credibility. He argues that she "forged her parent's signature to a note explaining her absence from school" and, although she testified that she was afraid of her father, she "had enough audacity" to show "X-rated" videos to her friends and drink alcohol with them in her house, show her friends her parents' dildo and be "present in the house when Bobby [P.] had sexual intercourse with Melissa in the bedroom."

*See footnote, *ante,* page 820.

## DISPOSITION

The judgment of conviction of violation of Penal Code section 288.5 is reversed, and the case is remanded for resentencing. In all other respects the judgment is affirmed.

Thaxter, J., and Franson, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.