Filed 8/29/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ANDRE HART, <br><br> Defendant and Appellant. | D083280 <br><br><br> (Super. Ct. No. SCD116891) |

APPEAL from a judgment of the Superior Court of San Diego County, Steven E. Stone, Judge.  Affirmed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

Andre Hart appeals from an order denying his petition to vacate a 1996 murder conviction after an evidentiary hearing under Penal Code[1] section

---

[1]    Unless otherwise noted, all further statutory references are to the Penal Code.

1172.6. He contends that: (1) the trial court erred by admitting into evidence his 2021 statements to a state forensic psychiatrist admitting that he was the shooter; (2) section 1172.6, subdivision (d)(2) and principles of due process precluded the trial court from denying relief on a theory that Hart was guilty of felony murder as the actual killer because the 1996 jury found not true a personal firearm use allegation; (3) the doctrine of issue preclusion also precluded the trial court from relying on a theory that Hart was the actual killer; and (4) there is insufficient evidence to support the trial court's alternative finding that Hart was guilty of felony murder as a major participant in the underlying robbery who acted with reckless indifference to human life. We reject the first three contentions and therefore need not decide the fourth. Accordingly, we affirm the order denying relief.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Evidence Presented at 1996 Jury Trial*

On the evening of February 17, 1995, Paul R. was in his apartment with a large group of people, including Hart and Mike D. Paul, Mike and Hart discussed committing a robbery to obtain drugs. Mike said he knew someone "out front" who sold crystal methamphetamine. Hart responded, "Check it out." Mike and Hart eventually left the apartment.

Gary Hendricks and his girlfriend, Christine H., lived together in the same apartment complex as Paul R. They both used methamphetamine and Gary occasionally sold small amounts to neighbors to support their habit. Christine had met Hart about a week before the murder when Hart sold Gary some boots.

Around 3:15 a.m. on February 18, Hart rang the intercom to Gary and Christine's apartment and asked for Gary. Gary went to the door, then returned and told Christine he was going to the store. He grabbed a phone,

2

car keys, and around $90 in cash.  After Gary left the apartment, Christine went after him to retrieve the phone he was carrying.  She saw Gary talking to Hart and Mike just outside the front door.

Christine retrieved the phone from Gary, then went back inside the apartment and closed the front door.  Within seconds, she heard a gunshot. She opened the front door and saw Hart crouched over Gary's head.  Gary was lying on his back dead from a single, close-range, gunshot wound to the neck.  Hart had a surprised look on his face.  Mike was running away.  Hart turned around and ran after Mike.  Christine did not see a gun in either man's hands.  She did not know whether Hart was the one who shot Gary. Gary had no money or narcotics on his person.

Hart fled to the nearby apartment of his friend, Michelle K.  He was breathing heavily, there was blood on his face, and he was holding a gun. According to Michelle, he told her that "he killed someone, he shot someone." He said that "some guy was talking too much and he shot him."  Hart had money and methamphetamine with him.  Ten days after the shooting, however, Michelle K. told the police that Hart had come over searching for his wife but did not say anything about having just shot someone.  She admitted she heard some details of the shooting on the news.

B. *1996 Jury Verdict and Judgment*

In July 1996, a jury convicted Hart of first degree murder (§ 187, subd. (a)) and being a felon in possession of a firearm (§ 12021, subd. (a)). The jury found not true an allegation that Hart personally used a firearm in the commission of the murder (§ 12022.5). The court found true allegations of serious felony priors, strike priors, and prison priors, and sentenced Hart to 85 years to life in prison. We affirmed the judgment on appeal. (*People v. Hart* (Aug. 27, 1997, D027595) [nonpub. opn.].)

C. *Section 1172.6 Proceedings*

In October 2022, Hart filed a petition to vacate his murder conviction under section 1172.6. The People agreed that an evidentiary hearing was warranted, and the court issued an order to show cause and conducted an evidentiary hearing in October 2023.

In the section 1172.6 proceedings, Hart argued that the jury's not true finding on the firearm use allegation precluded the trial court from relying on a theory that he was the shooter.

At the evidentiary hearing, the court received into evidence volumes 3, 5, and 7 of the reporter's transcript from the 1996 murder trial.

Over Hart's objection, the trial court also admitted into evidence a 2021 comprehensive risk assessment conducted by a state forensic psychologist, Dr. Kathryn Hughes.[2] Dr. Hughes interviewed Hart as part of the assessment. She stated in her report: "Mr. Hart was advised of the purpose of the assessment and that he had the right not to participate in the examination. He was also informed that the interview was not confidential

---

[2]     Comprehensive risk assessments are prepared by licensed psychologists employed by the Board of Parole Hearings for use at parole hearings to assess an inmate's risk of violence and analyze factors governing suitability for parole. (Cal. Code Regs., tit. 15, § 2240.)

and that a written report would be submitted to the Board of Parole Hearings (BPH) and considered at a hearing to determine parole suitability. He appeared to understand the nature of the evaluation and the possible consequences of the interview to the best of his ability. He agreed to participate with those explanations in mind."

During the interview, Hart told Dr. Hughes that "I was gonna buy some drugs for me - and when he came out of the [apartment] and when he tried to make a move, then I shot him." "It was kinda like I had the trigger pulled back on the gun. So, when he made a move, my hand shook and I shot him. Nothing would have happened if I hadn't been tryin' to get drugs and nothing would have happened if I hadn't pulled the gun on him." When asked why he pulled out the gun, Hart explained: "Had my hand on the trigger because I was gonna get some drugs or money from him." Hart also stated: "That stuff about me tryin' to jack somebody is on the records but that's not what happened. One of the guys was following me and thought he was going to get some cocaine from me after I got the meth. I had the hammer back on the gun and had the gun up to his head and when he moved I shot him." According to Hart, he was under the influence of methamphetamine at the time and was "[t]hinking about getting some more drugs." He admitted: "I was to blame. If I wouldn't have pulled the gun on the guy it wouldn't have been able to go off. I just was foolish."

D. *Trial Court's Ruling*

At the conclusion of the evidentiary hearing, the court denied the section 1172.6 petition. The court found beyond a reasonable doubt that Hart was the actual shooter based on his statements to Dr. Hughes in the comprehensive risk assessment and other evidence including Michelle K.'s trial testimony, which it found to be credible. Alternatively, the court

5

concluded that even if it did not consider the statements in the comprehensive risk assessment, it would still find based on Michelle K.'s testimony and other evidence that Hart directly aided and abetted the robbery of the victim as a major participant acting with reckless indifference to human life. Although the court did not say so explicitly, its findings make clear that it found Hart guilty on a felony murder theory under current law based on his participation in the underlying robbery as the actual killer (§ 189, subd. (e)(1)), or alternatively, as a major participant who acted with reckless indifference to human life (*id*. at subd. (e)(3)).

## DISCUSSION

### I

Hart first argues that the trial court improperly relied on his admission that he was the shooter in his 2021 interview with the state forensic psychologist who prepared a comprehensive risk assessment for the parole board. Hart contends that: (1) his statements to the psychologist were privileged under the psychotherapist-patient privilege (Evid. Code, § 1014); and (2) his statements should have been excluded based on the privilege against self-incrimination under the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 15 of the California Constitution.

These claims have been forfeited because they were not raised in the trial court. Hart's only argument below was that the comprehensive risk assessment was inadmissible hearsay and its admission would violate his rights under the confrontation clause of the Sixth Amendment. The trial court rejected those arguments and ruled that the assessment was admissible as a public record (Evid. Code, § 1280) and Hart's statements to the

6

psychologist were admissible as party admissions (Evid. Code, § 1220).[3] Hart does not renew his hearsay and confrontation clause objections on appeal, and he never argued in the trial court that his statements were inadmissible under the psychotherapist-patient privilege or the privilege against self-incrimination. Accordingly, the latter grounds for exclusion have been forfeited. (Evid. Code, § 353, subd. (a); *People v. Zamudio* (2008) 43 Cal.4th 327, 353; *People v. Partida* (2005) 37 Cal.4th 428, 434–435.)

For the first time in his reply brief, Hart argues that if these issues are forfeited, his attorney provided ineffective assistance of counsel by failing to assert these grounds for exclusion in the trial court. But this alternative claim is also forfeited because it was raised for the first time in the reply brief. (See *People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9 [claim of ineffective assistance of counsel raised for first time in reply brief is forfeited].)

We would nevertheless reject Hart's new arguments on the merits even if they were preserved. As for the psychotherapist-patient privilege, Hart was not a "patient" of Dr. Hughes's because he did not consult her or submit to an examination by her "for the purpose of securing a diagnosis or . . . treatment of his mental or emotional condition" or "for the purpose of scientific research on mental or emotional problems." (Evid. Code, § 1011.) Rather, the purpose of the assessment was for the parole board's use in determining Hart's parole suitability. (See *People v. Cabral* (1993) 12 Cal.App.4th 820, 827–828 [narrowly construing existence of requisite psychotherapist-patient relationship, adopting "dominant purpose" test, and

---

[3]  The court later clarified that the only portions of the comprehensive risk assessment it was considering were Hart's statements to the psychologist and the psychologist's statements to him that his participation was voluntary and the interview was not confidential. The court also indicated that it would allow Hart to call the psychologist as a witness at the evidentiary hearing, but he did not do so.

finding that defendant was not a "patient" because his dominant purpose in writing to doctor was not to obtain treatment but to avoid a prison sentence]; *In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1168 [rejecting claim of psychotherapist-patient privilege where mother participated in bonding study to prevent termination of parental rights, not to seek diagnosis or treatment].)  Moreover, Hart's statements to Dr. Hughes were not a "confidential communication" (Evid. Code, § 1014) because she specifically informed him that the interview was "not confidential."  (See *Y.C. v. Superior Court* (2021) 72 Cal.App.5th 241, 258–259 [privilege did not apply where county therapist informed juvenile the interview would not be confidential and would be disclosed to probation and court].)

As for the privilege against self-incrimination, California courts have uniformly concluded that incriminating statements made by a prisoner during parole proceedings may be admitted at an evidentiary hearing under section 1172.6, subdivision (d)(3) without violating the privilege.  (*People v. Rodriguez* (2025) 110 Cal.App.5th 458, 466 [citing *People v. Zavala* (2024) 105 Cal.App.5th 366; *People v. Duran* (2022) 84 Cal.App.5th 920; *People v. Anderson* (2022) 78 Cal.App.5th 81; *People v. Mitchell* (2022) 81 Cal.App.5th 575; *People v. Myles* (2021) 69 Cal.App.5th 688].)  In *Rodriguez*, the court found admissible statements made by a section 1172.6 petitioner during a comprehensive risk assessment in which he for the first time identified himself as the shooter in the underlying murder.  (*Rodriguez*, at pp. 461, 466–468.)  In *Zavala*, the court also found admissible incriminating statements made by the petitioner during a comprehensive risk assessment for a parole hearing.  (*Zavala*, at pp. 371–378.)  We perceive no reason to depart from the holdings of these cases.

8

Accordingly, even if these issues were preserved, we would find no violation of the psychotherapist-patient privilege or the privilege against self-incrimination.

## II

Hart next contends that the trial court was estopped by principles of due process from relitigating issues on which a jury had previously acquitted him. Although his argument heading refers to due process, the substance of his argument is purely statutory. Specifically, Hart contends that because the jury found not true the personal firearm use allegation at trial, section 1172.6, subdivision (d)(2) precluded the trial court from relying on a theory that he was guilty of felony murder as the actual killer.

We reject this statutory claim. Section 1172.6, subdivision (d)(2) provides in relevant part: "If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." This provision applies when a felony-murder special circumstance was alleged and found not true at trial. (See, e.g., *People v. Flint* (2022) 75 Cal.App.5th 607, 614–616.) But here, no felony-murder special circumstance was charged or considered by the jury.[4] Thus, the jury was not instructed on the reckless indifference or major participant requirements for a felony-murder special circumstance, nor did it make any finding on these issues. Moreover, the jury's not true finding on the personal firearm use allegation is not equivalent to a finding that Hart

---

[4] In his opening brief, Hart originally suggested that the jury found not true a felony murder special circumstance. In his reply brief and a concurrently filed errata to the opening brief, however, Hart conceded he was mistaken and was not in fact charged with a felony murder special circumstance.

9

was not a major participant who acted with indifference to human life. As the People argue, one need not personally use a firearm to be a major participant in a robbery who acts with reckless indifference to human life. (See *People v. Clark* (2016) 63 Cal.4th 522, 618 [use of firearm is one relevant factor, but no single factor is necessary for reckless indifference finding]; *People v. Banks* (2015) 61 Cal.4th 788, 803 [supplying or using lethal weapons is one relevant factor, but no single factor is necessary for major participant finding].) Hart does not demonstrate otherwise.

Accordingly, section 1172.6, subdivision (d)(2) does not apply here. We therefore reject Hart's argument that this subdivision precluded the court from relying on a theory that he was guilty of felony murder as the actual killer. Because Hart has not argued any due process argument independent of his statutory claim, we reject his due process claim as well.

### III

Hart's opening brief made a passing reference to case authorities on issue preclusion (collateral estoppel) but did not raise the issue under a distinct argument heading. In a footnote of their respondent's brief, the People asserted that issue preclusion had not been raised on appeal. Because it was unclear whether Hart intended to raise the issue, we requested supplemental briefing so that both sides would have an adequate opportunity to address it. In his supplemental brief, Hart argues that under the doctrine of issue preclusion, the jury's not true finding on the personal use enhancement precludes any reliance on a theory that he was the actual killer. The People contend that issue preclusion does not operate in this way for various reasons. We find one to be dispositive. Under binding Supreme Court authority, issue preclusion does not apply because Hart's personal use of the gun is not an "ultimate fact" that has to be proven beyond a reasonable

doubt to find him guilty of murder. (*People v. Santamaria* (1994) 8 Cal.4th 903, 921–922 (*Santamaria*).)

The "threshold requirements" of issue preclusion are: (1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) this issue must have been actually litigated in the former proceeding; (3) it must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. (*People v. Curiel* (2023) 15 Cal.5th 433, 451–452 (*Curiel*).)

" '[W]hile these threshold requirements are necessary, they are not always sufficient: "Even if the[] threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles" of promoting efficiency while ensuring fairness to the parties.' " (*Curiel, supra*, 15 Cal.5th at p. 454.)

One additional requirement the Supreme Court has recognized in circumstances very similar to this case is an "ultimate fact" requirement. (*Santamaria, supra*, 8 Cal.4th at pp. 921–922.) In *Santamaria*, a jury convicted the defendant of murder but found not true a knife-use enhancement. After the Court of Appeal reversed the murder conviction, the trial court on remand precluded the prosecution from retrying the defendant on a theory that he personally used the knife during the killing. When the prosecution announced it was unable to proceed in light of this ruling, the trial court dismissed the case. The People appealed and the Court of Appeal affirmed. The Supreme Court granted review. (*Santamaria*, at pp. 909–910.)

On the merits, the Supreme Court first questioned whether issue preclusion applies to the same proceeding on retrial after a reversal but

11

ultimately declined to decide the issue. (*Santamaria, supra*, 8 Cal.4th at pp. 913–916.) Instead, the Supreme Court found the trial court's ruling was erroneous because two essential requirements for issue preclusion were absent: (1) the issue sought to be precluded on retrial was not identical to the issue necessarily decided by the weapon enhancement verdict; and (2) whether defendant used a knife was not an "ultimate" fact for the murder charge. (*Santamaria*, at pp. 916–922.)

We focus on the second of these two requirements because it most clearly dictates the result. As to this requirement, *Santamaria* reasoned that the jury's not true finding on the knife-use enhancement was not entitled to preclusive effect because the issue to be foreclosed must be one of ultimate fact and personal use of a knife is not an ultimate fact of murder. (*Santamaria, supra*, 8 Cal.4th at pp. 921–923.) The court explained: "Evidence that defendant personally used a knife was highly relevant to show that he was guilty of murder as that offense is defined by statute. . . . But the specific fact of personal use does *not* have to be proven beyond a reasonable doubt to find defendant guilty of murder. Hence, personal use is not an 'ultimate fact' of murder. [¶] We thus hold that collateral estoppel does not apply." (*Id*. at p. 922.)

*Santamaria* derived this ultimate fact requirement from *Ashe v. Swenson* (1970) 397 U.S. 436 (*Ashe*), "the landmark case engrafting collateral estoppel onto the double jeopardy clause." (*Santamaria, supra*, 8 Cal.4th at p. 908.) As *Santamaria* observed, *Ashe* "made clear that the issue to be precluded must be 'an issue of ultimate fact' that 'has once been determined by a valid and final judgment.' " (*Id*. at p. 921, quoting *Ashe*, 397 U.S. at p. 443; see also *People v. Catlin* (2001) 26 Cal.4th 81, 124–125 [describing this part of *Santamaria* and the Ninth Circuit's subsequent agreement with it in

12

*Santamaria v. Horsley* (9th Cir. 1998) 133 F.3d 1242, 1247]; *Bobby v. Bies* (2009) 556 U.S. 825, 828, 835–836 [state appellate court's determination that defendant suffered from intellectual disability was not "an 'ultimate fact' of the kind our decision in *Ashe* addressed" because "determinations of his mental capacity were not necessary to the ultimate imposition of the death penalty"].)

In dissent, Justice Mosk would have applied the ultimate fact requirement differently. He concluded that the People on retrial should have been precluded from prosecuting Santamaria as a principal solely on the theory that he personally used a knife in the murder. (*Santamaria, supra*, 8 Cal.4th at p. 932 (conc. & dis. opn. of Mosk, J.).) He reasoned: "[T]he issue defendant sought to foreclose on retrial was the same as one of those actually determined in the original trial: whether or not he personally used a knife in the murder . . . . [¶] It is an issue of 'ultimate fact.' An 'ultimate fact' is one that 'must be proven beyond a reasonable doubt.' [Citations]. Such is the case here. . . . [P]ersonal use of a knife is a necessary fact for the unlawful-act element of the crime of murder *insofar as guilt is predicated on a theory dependent thereon*—in this case, on a theory that defendant was a principal as a direct and active perpetrator *solely through his personal use of a knife*." (*Id.* at pp. 931–932 (conc. & dis. opn. of Mosk, J.).) Justice Mosk also attached as an appendix to his separate opinion the Court of Appeal's opinion, authored by Justice Werdegar before she was appointed to the Supreme Court, which reached the same result. (*Id.* at p. 929, fn. 1 & 937–949 (conc. & dis. opn. of Mosk, J.).)

One court has explained the *Santamaria* majority's holding on this issue as follows: "In the particular context of criminal prosecutions the requirement that an issue concern an 'ultimate fact' refers to the elements

13

that must be proved in a second prosecution beyond a reasonable doubt. A finding in a prior prosecution showing that the state did not meet its burden to prove an issue beyond a reasonable doubt is not binding in a subsequent prosecution if that same issue need not be proved beyond a reasonable doubt in the subsequent prosecution." (*Key v. Tyler* (2019) 34 Cal.App.5th 505, 535, fn. 15.) "Thus, for example, . . . a jury's verdict rejecting a sentencing enhancement based upon personal use of a knife does not preclude a subsequent murder prosecution based upon a theory of knife use where such knife use need not be proved for a murder conviction." (*Ibid*.; see also *In re Cruz* (2003) 104 Cal.App.4th 1339, 1344–1346 [habeas court's finding that defendant was not the shooter after 18-day evidentiary hearing did not bar retrial on the theory that he was the shooter in part because it was not an "ultimate fact" necessary to prove murder].)

Under *Santamaria*, the jury's not true finding on the firearm use allegation in Hart's trial does not have preclusive effect here because it is not an ultimate fact necessary to find Hart guilty of murder. At an evidentiary hearing in a section 1172.6 proceeding, the question before the court is the same as it would be at a retrial for the murder: whether the petitioner is guilty of murder beyond a reasonable doubt under current law. (§ 1172.6, subd. (d)(3).) Under current law, a participant in a robbery may be guilty of felony murder as the "actual killer" without using a firearm (§ 189, subd. (e)(1)), or alternatively, as either an aider and abettor who acted with intent to kill and assisted the actual killer in committing the murder (*id*., subd. (e)(2)) or a major participant who acted with reckless indifference to human life (*id*., subd. (e)(3)). Because "the specific fact of personal use does *not* have to be proven beyond a reasonable doubt to find defendant guilty of murder" under any of these theories, "personal use is not an 'ultimate fact' of murder"

14

and "collateral estoppel does not apply." (*Santamaria, supra*, 8 Cal.4th at p. 922.)

A contrary result would effectively give section 1172.6 petitioners greater double jeopardy protection by way of issue preclusion than criminal defendants on trial for murder. If this were a retrial rather than a section 1172.6 proceeding, the jury's not true finding on the firearm use enhancement would not preclude reliance on an actual killer theory under the holding of *Santamaria*. But it would make little sense to afford section 1172.6 petitioners greater protection against a redetermination of factual issues than they would enjoy in a criminal trial. Double jeopardy concerns are not even implicated in a section 1172.6 proceeding because the relief provided is a legislative act of lenity designed to give convicted defendants the benefit of ameliorative changes in the law of murder, and it does not result in a new trial or increased punishment. (*People v. Hernandez* (2021) 60 Cal.App.5th 94, 111.) We see no basis to disregard the ultimate fact requirement in a way that would give section 1172.6 petitioners greater preclusive shelter than defendants in a murder trial or retrial.

We recognize that two other Court of Appeal cases have analyzed *Santamaria* and applied issue preclusion where the trial court had decided an issue against the defendant in section 1172.6 proceedings that was "identical" to one on which the jury had previously found in his favor. (*People v. Lopez-Barraza* (2025) 110 Cal.App.5th 1227, 1245–1248 (*Lopez-Barraza*) [giving preclusive effect to jury's acquittal on conspiracy charge]; *People v. Arnold* (2023) 93 Cal.App.5th 376, 388 [giving preclusive effect to jury's not true finding on knife use allegation].) But these cases only discussed the identical issue requirement under *Santamaria*. Neither of these cases involved the ultimate fact requirement, which was a separate and

15

independent ground for the Supreme Court's holding discussed under a separate subheading. (*Santamaria, supra*, 8 Cal.4th at pp. 921–922; see *Fire Ins. Exchange* v. *Abbott* (1988) 204 Cal.App.3d 1012, 1022 [when appellate court bases its decision on alternative grounds, none is dictum].) *Arnold* did not mention the ultimate fact requirement at all (*Arnold*, at p. 388) and *Lopez-Barraza* mentioned it only in a footnote but not its analysis. (*Lopez-Barraza*, at p. 1246, fn. 16.) It therefore appears that the ultimate fact requirement was not argued by the People in either of those cases. (See *id*. at p. 1246 ["The People rely on *Santamaria*'s analysis and holding that the issue to be determined at retrial was not identical to any issue necessarily decided by the jury's verdict of acquittal on the knife use enhancement."].) By contrast, the People here do argue that the ultimate fact requirement of issue preclusion is not satisfied.

In distinguishing *Santamaria*, *Lopez-Barraza* seemed to suggest that issue preclusion operates differently in a section 1172.6 proceeding because the statute only requires the court to consider issues that were not relevant and therefore not previously decided under the law of murder as it existed before the 2019 amendments to sections 188 and 189. (*Lopez-Barraza, supra*, 110 Cal.App.5th at pp. 1247–1248.) The court reasoned: "Because section 1172.6 is not meant to provide for *relitigation* of issues that *were* decided at the prior trial, however, the resentencing court is precluded from deciding the new issues based on factual findings that are inconsistent with facts *necessarily* found by the jury." (*Ibid*.)

For several reasons, we are not persuaded by the suggestion that a more expansive version of issue preclusion applies in section 1172.6 proceedings than in criminal cases generally. First, the Supreme Court has concluded that "[b]ecause the text of section 1172.6 does not speak in any

16

direct way to the issue" (*People v. Strong* (2022) 13 Cal.5th 698, 715 (*Strong*)), "general principles of issue preclusion inform[] our consideration of the effect of prior jury findings in a resentencing proceeding under section 1172.6." (*Curiel, supra*, 15 Cal.5th at p. 451.)  As *Lopez-Barraza* itself observed, "the Supreme Court has now made clear that principles of issue preclusion (collateral estoppel) should ordinarily be applied to determine whether a jury's findings at trial will be binding in section 1172.6 proceedings." (*Lopez-Barraza, supra*, 110 Cal.App.5th at p. 1251, fn. 18.)  Although the Supreme Court has not yet decided whether the doctrine "applies wholesale" in section 1172.6 proceedings (*Curiel*, at p. 451), *Strong* and *Curiel* instruct that ordinary principles of issue preclusion generally apply.

Second, as the Supreme Court recognized in *Strong* and *Curiel*, the statutory scheme does not state or suggest otherwise.  At an evidentiary hearing under section 1172.6, subdivision (d)(3), the trial court "acts as an independent fact finder to determine whether the prosecution has met its burden" of proving guilt beyond a reasonable doubt under the amended law of murder.  (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457.)  The statute allows the parties to offer "new or additional evidence to meet their respective burdens."  (§ 1172.6, subd. (d)(3).)  Except as expressly provided in the statute, the ordinary rules of evidence apply.  (*Ibid*.)  Nothing in the statute suggests that the trial court acting as independent fact finder to decide the petitioner's guilt of murder under current law is bound by previous factual findings that would *not* otherwise be binding in a criminal trial or retrial.

Finally, the language of *Lopez-Barraza* could be read to suggest that *any* "facts *necessarily* found by the jury" are binding in a section 1172.6 proceeding, even if they are not ultimate facts of murder.  (*Lopez-Barraza,*

17

*supra*, 110 Cal.App.5th at p. 1248.)  But because the court there did not address the ultimate fact requirement of issue preclusion, the decision should not be construed so broadly.  A case is not authority for propositions not considered.  (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10.)  Under *Santamaria*, the facts necessarily found by the jury are preclusive only if they are ultimate facts of the offense.  (*Santamaria, supra*, 8 Cal.4th at pp. 921–922.)  We are bound by this holding.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

We are aware that our court has previously concluded a jury's not true finding on a personal firearm use allegation precluded the trial court in a section 1172.6 proceeding from relying on its own contradictory finding that the defendant was armed with a firearm based on the same evidence.  (*People v. Henley* (2022) 85 Cal.App.5th 1003, 1017–1020 (*Henley*).)  But *Henley* and the case it relied on, *People v. Cooper* (2022) 77 Cal.App.5th 393 (*Cooper*), both applied a theory of preclusion derived from Proposition 36 case law rather than issue preclusion.  (*Henley*, at p. 1018; *Cooper*, at pp. 413–416.)  *Cooper* applied this theory only after concluding it was "not clear whether collateral estoppel principles apply in section [1172.6] proceedings."  (*Cooper*, at p. 413.)  As we have noted, however, the Supreme Court has since clarified that because section 1172.6 is silent on the question, the preclusive effect of prior jury findings should generally be analyzed within the normal contours of the collateral estoppel doctrine.  (*Curiel, supra*, 15 Cal.5th at p. 451; *Strong, supra*, 13 Cal.5th at pp. 715–717.)  Neither *Henley* nor *Cooper* addressed the ultimate fact requirement of issue preclusion under *Santamaria*.

Furthermore, *Henley* and *Cooper* both placed great emphasis on the fact that no new evidence on the relevant fact was presented at the 1172.6

18

evidentiary hearing—and the trial court in each case made a finding that directly contradicted the jury's based on the same evidence that was before the jury on the issue. (See *Henley, supra*, 85 Cal.App.5th at p. 1019 ["the People do not point to any new evidence presented at the section 1172.6 evidentiary hearing that addresses whether Henley used a firearm during the robbery"]; *Cooper, supra*, 77 Cal.App.5th at p. 416 ["the prosecution did not introduce any new or additional evidence at the hearing, and the trial court's conclusion that Cooper was ineligible for relief was based on the same evidence the jury considered"].) In this case, by contrast, the prosecution did present new evidence that Hart was the shooter in the form of his own admission to the forensic psychologist. (See § 1172.6, subd. (d)(3) [allowing both parties to "offer new or additional evidence to meet their respective burdens"].) Although new evidence ordinarily would not defeat the doctrine of issue preclusion if it otherwise applied (*Direct Shopping Network, LLC v. James* (2012) 206 Cal.App.4th 1551, 1561), the courts in *Henley* and *Cooper* treated the absence of new evidence as important to their statutory preclusion theory. Thus, even if this theory of preclusion survived *Strong* and *Curiel*, it is doubtful it would apply here.

In sum, none of these prior Court of Appeal cases have explained why the ultimate fact requirement recognized in *Santamaria* would not apply to resentencing proceedings under section 1172.6. Following *Santamaria* as we must, we conclude the jury's not true finding on the personal firearm use allegation did not preclude the trial court from relying on an actual killer theory in determining Hart's guilt of felony murder in the section 1172.6 proceedings because his personal use of a firearm was not an ultimate fact of murder. (*Santamaria, supra*, 8 Cal.4th at pp. 921–922.) To rule otherwise, we would either have to adopt the reasoning of Justice Mosk's dissent or find

19

that the ultimate fact requirement applies differently or not at all in a section 1172.6 proceeding.  We cannot do the former and see no basis for the latter absent further guidance from the Supreme Court as to the proper application of issue preclusion under *Strong* and *Curiel*.[5]

## IV

Finally, Hart contends there is insufficient evidence to support the trial court's alternative finding that he was guilty of felony murder as a major participant in the robbery who acted with reckless indifference to human life.  Because we have found no error in the trial court's finding that Hart was the actual killer, we need not decide this issue.  Under current law, a defendant may be found guilty of felony murder if any *"one of the following* is proven: [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e), italics added.) Accordingly, the trial court's finding that Hart was guilty of felony murder as

---

[5]    *Santamaria* also concluded that a "public policy exception" to issue preclusion would apply even if it were otherwise applicable. (*Santamaria, supra*, 8 Cal.4th at p. 917, fn. 6.)  The court reasoned: "To allow an ancillary *sentencing* determination in the prior trial to govern what theories and evidence are available in a *guilt* retrial would not advance 'the public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation . . . .' [Citation.]  Moreover, telling the jury defendant did not use the knife, despite the evidence that he did, would undermine confidence in the truth-seeking function of the judicial system, and discourage the legitimate charging of enhancements." (*Ibid*.)  In light of our conclusion on the ultimate fact requirement, we need not decide whether this public policy exception would apply here as well.

the actual killer is sufficient to sustain its ruling denying the section 1172.6 petition.[6]

## DISPOSITION

The order denying the section 1172.6 petition is affirmed.

BUCHANAN, J.

WE CONCUR:

DO, Acting P. J.

KELETY, J.

---

[6] To the extent we deferred a ruling on Hart's motion to augment the record filed March 5, 2024, the motion is hereby granted as to the materials contained in the augmented record filed May 10, 2024 and denied as to any additional materials.